**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN COMPO, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>UNITED AIRLINES, INC., and<br>UNITED AIRLINES HOLDINGS, INC.,<br><br>      Defendants. | Case No.<br><br><br><br><br><br><u>JURY TRIAL DEMANDED</u> |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff John Compo ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants United Airlines, Inc. and United Airlines Holdings, Inc. (collectively, "Defendants" or "United"), by and through his attorneys, and alleges as follows based on information and belief, except as to allegations specifically pertaining to Plaintiff, which are made upon personal knowledge:

**INTRODUCTION**

1.      America is at war with an invisible enemy. In late December 2019, a previously undiscovered coronavirus surreptitiously spread from animals to humans in a wet market in Wuhan, the capital of China's Hubei province, and began its march across continents, rivers and oceans, infecting countless people along the way.

2.      Unlike prior coronaviruses, such as the virus that caused Middle East Respiratory Syndrome, this virus and the disease it causes—dubbed COVID-19—spreads insidiously. Due to its potentially extensive incubation period and ability to transmit itself via asymptomatic hosts, COVID-19 has wreaked unprecedented havoc across the globe. Indeed, although the virus was not

detected in the United States until mid-January 2020, it has now infected at least 300,000 people across the country.

3.      In an effort to slow the virus's spread and avoid overwhelming medical systems, beginning in late February state and local governments across the country began issuing "stay-at-home" orders that confine residents to their homes, allowing them to leave only for necessities such as medical care and food. The American economy is in tatters, and across the country millions suddenly have found themselves wondering where they will turn for income if the crisis persists.

4.      Unsurprisingly, airline travel has come to a near standstill as Americans find themselves unable to leave their homes, let alone travel domestically or internationally, and over the last month United and its competitors have had no choice but to cut schedules and cancel thousands of flights.

5.      Unfortunately for Plaintiff and the putative Class, however, United has shifted the burden of this extraordinary crisis onto its customers, who, in some cases, paid thousands of dollars for flights the COVID-19 pandemic precludes them from taking. Specifically, and unlike its competitors, United has ignored its obligation to refund to its customers monies they paid for flights they will never take, but which they may sorely need to provide for themselves and their families during this trying time.

6.      United has engaged in unfair, unlawful and unconscionable practices in order to unjustly enrich itself at the expense of its customers, and Plaintiff brings this action in order to secure refunds for each and every similarly situated consumer United has wronged by refusing to issue full refunds for flights cancelled as a direct and proximate result of the COVID-19 crisis.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005, because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over Defendants because they are headquartered in this judicial district.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this district, transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

10.      Plaintiff JOHN COMPO is a resident and citizen of Vermont.

11.      Plaintiff purchased a roundtrip ticket to visit his daughter in New Zealand through United's website. Plaintiff paid $1051.95 for the ticket for a trip beginning on April 6, 2020.

12.      On April 3, 2020, United emailed Plaintiff and informed him that his flight was canceled. On April 5, 2020, Plaintiff called United to request a refund but was informed that he would only be provided with a voucher for a future flight and that he would not receive a refund for the ticket price.

13.     During his April 5, 2020 call with United, Plaintiff also spoke with a United agent whose supervisor recommended that he attempt to receive a refund through www.united.com/refunds. However, when he visited that site, there was no refund option available for his ticket.

14.     To date, United has not refunded Plaintiff the price of his ticket.

15.     Defendant UNITED AIRLINES, INC. is a Delaware corporation with its principal place of business located at 233 S. Wacker Dr., Chicago, Illinois 60606, and is a resident of Delaware and Illinois.

16.     Defendant UNITED AIRLINES HOLDINGS, INC. is a Delaware corporation with its principal place of business located at 233 S. Wacker Dr., Chicago, Illinois 60606, and is a resident of Delaware and Illinois.

## FACTUAL ALLEGATIONS

17.     The current pandemic, like most health catastrophes, began silently and unexpectedly. On December 31, 2019, Chinese authorities reported that an unknown virus had begun to spread in Wuhan, the capital of China's Hubei province. The virus, which medical authorities were unable to identify, proved capable of producing a severe respiratory infection that, in some cases, required hospitalization and caused death.

18.     It was not until early January 2020 that the World Health Organization ("WHO") identified the virus as a "novel," or undiscovered, coronavirus for which humans have no known immunity. The WHO would later officially name the disease the novel coronavirus produces "coronavirus disease 2019," or COVID-19.

19.     COVID-19 initially appeared contained to China and other portions of eastern Asia. But on January 20, 2020, authorities diagnosed the first official case of COVID-19 in the United States, in a 35-year-old who had recently returned from Wuhan to the State of Washington.

20.     COVID-19 spread quickly. By January 30, 2020, there were nearly 8,000 confirmed cases of COVID-19 worldwide. In response, the WHO declared COVID-19 a "Public Health Emergency of International Concern." The next day, President Trump declared a public health emergency due to COVID-19, and the U.S. State Department banned travel between the United States and China.

21.     Unfortunately for residents of the United States, the President's actions were too little, too late; COVID-19 had already proven capable of spreading silently through communities, steadily increasing its reach before its existence is detected. On February 29, 2020—the same day the U.S. government issued a "do not travel" warning and prohibited travel between the United States and several countries with COVID-19 outbreaks—the State of Washington became the first state to declare a state of emergency due to COVID-19. It would not be the last to do so.

22.     On March 11, 2020, the WHO reclassified COVID-19 as a worldwide pandemic. That same night, President Trump made a televised address from the Oval Office during which he announced a moratorium on all flights from Europe (excluding Great Britain) for 30 days. The President extended that ban to Great Britain the very next day.

23.     The President declared a "National Emergency" on March 13, 2020 and, on March 15, the Centers for Disease Control and Prevention recommended avoiding gatherings of 50 people or more. The next day, the federal government tightened those guidelines and recommended avoiding groups of 10 people or more.

24.     Despite these efforts, by March 23, 2020 the United States had reported more confirmed cases of COVID-19 than any other county in the world, and by the end of March the governors of most states had declared states of emergency due to COVID-19. State and local officials across the country also had issued stay-at-home orders that canceled public events, banned group gatherings, and closed schools, restaurants, and retail stores and prohibited unnecessary travel for weeks, if not indefinitely.

25.     As a direct and proximate result of this unprecedented crisis, in March many airlines, including United, canceled or rescheduled flights.

26.     For example, on March 4, 2020, United announced that it would reduce scheduled flights in April in the United States and Canada by 10%, and reduce international flights by 20%.

27.     On March 17, 2020, United announced a further reduction in flights scheduled for April and May, reducing flights in the United States and Canada by 42%, and internationally by 85%. By March 20, 2020, United had cancelled approximately 95% of international flights scheduled for April.  It expects to continue to cancel flights in this manner through the summer of 2020.

28.     United, like most of its competitors, undoubtedly is suffering as a result of these untenable economic conditions. But for their part, U.S. taxpayers, through the federal government, have provided substantial assistance to the airline industry in order to insulate its most critical components—the men and women in its employ—from the economic hardship the pandemic might otherwise impose upon them. In March 2020, Congress passed the Coronavirus Aid, Relief and Economic Security Act (dubbed the "CARES Act"), which, *inter alia*, provides more than $58 billion in aid to U.S. airlines, notwithstanding the fact that over the past decade the country's largest airlines have spent roughly 96% of their free cash flow on stock buybacks.

6

29.     Unlike most of its competitors, however, in the face this crisis and concern from travelers, United changed its refund policies to the detriment of its customers and the benefit of its shareholders.

30.     Prior to the COVID-19 pandemic, United's uniform policy provided that when a flight was delayed by 2 hours or more, United would refund the passenger the price of the ticket. But on March 7, 2020, United unilaterally changed its refund policy: only flights delayed 25 hours or more were eligible for cash refunds, and United applied the policy retroactively to all previously booked fares.

31.     Consumers immediately began to complain, likely due in no small part to the immense financial pressure COVID-19 imposed on all Americans. So, on March 10, 2020, only days after it changed its policy, United changed course yet again. United's new policy—its third in several days—provided that it would issue cash refunds, but only on a case-by-case basis.

32.     United's illusory efforts did little to alleviate its customers' concerns since it still presented a marked shift from its original refund policy, thus, four days later, on March 14, 2020, United adopted its fourth cancelation and refund policy, which remains in effect today.

33.     The March 14th policy provides that a delay of 6 hours or more constitutes a cancellation, but instead of issuing a cash refund United will now provide passengers only a credit for the value of the ticket and any optional fees paid, such as baggage fees, meals, or seat upgrades. Customers also must use the credit within 12 months of the originally scheduled flight.

34.     Only if the canceled-ticket credit is not used within 12 months of the originally scheduled flight is the passenger eligible for a cash refund. However, the passenger is required to request a refund from United, and United will deduct a cancelation fee from the value of the credit. United also retroactively applied the March 14th policy to previously purchased tickets.

7

35.     United's March 14th policy thus provides that when *United* cancels a flight, its passengers are ineligible for a cash refund (net of cancellation fees) until more than a year has passed. In other words, rather than make its customers whole in this time of need by refunding them monies they paid for flights they will never take, United has elected to force its customers to provide it with a one-year, interest free loan, one for which United's customers ultimately will pay a fee.

36.     United describes the changes to its policies and its refusal to provide cash refunds for canceled flights as "accomodat[ing] customers by offering more options to rebook their flights."

37.     United's fourth iteration of its cancelation policy in March 2020 was not well-received.  One well-known travel website described United's policy as "simply deplorable," and tantamount to "expecting customers to provide [United] a 12 month interest free loan."[1]

38.     Indeed, few consumers will be able to actually use the credit for a canceled flight, as the vast majority of airline passengers fly only once each year.[2]

39.     In response to United's new policy, a group of nine United States Senators issued a public letter castigating United for its conduct and insisting that United refund customer fares. The letter states, in pertinent part:

> We write to urge your airline to issue full cash refunds to all customers who cancel their flights during the COVID-19 crisis, and to American citizens who encounter flight cancelations while stranded in countries that implemented travel restrictions. The ongoing pandemic is placing enormous financial strain on millions of Americans, and families need cash to pay for essentials such as food, housing, and medical care. In light of this pressing need and the unprecedented bailout—to the tune of $25 billion—that the

---

[1] *See United Will Refund You in a Year for Canceled Flight*, ONE MILE AT A TIME, *www. https://onemileatatime.com/united-airlines-refund-one-year/* (last accessed Apr. 6, 20202).

[2] *See* JT Genter, *American Airlines Dropped Some Amazing Stats at its Media Day*, The Points Guy (Sept. 28, 2017), https://thepointsguy.com/2017/09/american-airlines-amazing-stats/ (noting that American Airlines stated that 87% of its passengers fly only once per year).

airline industry just received from Congress, we believe your company has a moral responsibility to provide real refunds, not travel vouchers, to consumers, and to support State Department efforts to repatriate any American citizens trying to come home.

* * *

It would be unacceptable to us for your company to hold onto travelers' payments for canceled flights instead of refunding them, especially in light of the $25 billion bailout that the airline industry just received from Congress.

40. On April 3, 2020, in response to United's and other airlines' refusals to issue refunds to passengers for canceled flights, the United States Department of Transportation issued an Enforcement Notice Regarding Refunds By Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency On Air Travel" (the "Enforcement Notice").[3] The Enforcement Notice states that:

Carries have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's scheduled flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions).

41. Moreover, the requirement to provide a "prompt refund" applies to passengers who purchased "non-refundable tickets" and applies to any optional fee charged for services a passenger is unable to use, such as baggage fees, meals, and seat upgrades.

42. The Enforcement Notice also states that this obligation "does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions)." Instead, airlines are to offer refunds whenever passengers are not at fault for the cancellation, regardless of whether the cancellation is within or outside the carrier's control.

---

[3] Available at: https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last visited Apr. 6, 2020).

43. The "longstanding obligation" regarding refunds is set forth in the Code of Federal Regulation. Specifically, consumers are entitled to refunds whenever their carrier cancels their flight. 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011) ("Since at least the time of an Industry Letter of July 15, 1996 . . . the Department's Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is canceled and the passenger wishes to cancel is a violation of 49 U.S.C. 41712 (unfair or deceptive practices) and would subject a carrier to enforcement action.").

44. Despite the significant backlash regarding United's cancelation and refund policy, United continues to refuse to provide a cash refund to passengers for flights that United canceled.

## CLASS ALLEGATIONS

45. Plaintiff brings this action, individually and, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), on behalf of a Nationwide Class defined as follows:

> All persons in the United States who purchased airline tickets through United Airlines, or for flights on United Airlines, to, from or within the States, and sought to cancel their flights, or had their flights cancelled, on or after February 29, 2020.

46. In the alternative, Plaintiff brings this class action on behalf of the following State Subclass:

> **The Vermont Class**:
>
> All persons in Vermont who purchased airline tickets through United Airlines, or for flights on United Airlines, to, from or within the States, and sought to cancel their flights, or had their flights cancelled, on or after February 29, 2020.

Excluded from the Class are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

47.    **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information being in the sole possession of United and obtainable by Plaintiff only through the discovery process. Plaintiff believes, and on that basis allege, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on United's records.

48.    **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.    Whether federal regulations require United to provide passengers a refund when United cancels the passenger's flight;

b.    Whether United committed common law fraud;

c.    Whether United was unjustly enriched by its conduct; and

d.    Whether United violated the Vermont Consumer Fraud Act.

49.    **Typicality**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out United's uniform conduct, statements, and unlawful, unfair, and deceptive acts and practices.

50.    **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

51.    **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by

each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by United's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

52.    United has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
## VIOLATIONS OF THE ILLINOIS CONSUMER
## FRAUD AND DECEPTIVE PRACTICES ACT
### (on behalf of the Nationwide Class)

53.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

54.    Illinois's Consumer Fraud and Deceptive Business Practices Act prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, including among others, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, … whether any person has in fact been misled, deceived, or damaged thereby."  815 ILCS 505/2. The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

55.    Airline tickets are "merchandise" as defined in 815 ILCS 505/1(b). United is a

"person" as defined in 815 ILCS 505/1(c). Plaintiff and the other Class members are "consumers" as defined in 815 ILCS 505/1(e).

56.     In the course of United's business, it knowingly and intentionally failed to provide refunds to consumers, such as Plaintiff, when Defendant cancelled their flights.

57.     United had actual knowledge of the Enforcement Notice and consumers' right to a refund as described herein, but refused to provide refunds to consumers.

58.     Upon being contacted by consumers, such as Plaintiff, United engaged in unfair and deceptive acts and practices by stating consumers were only able to obtain a voucher and not a refund.

59.     United's unfair and deceptive practices were done to enrich its bottom line to the detriment of Plaintiff and the Class.

60.     The injuries suffered by Plaintiff and the Class are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class should have reasonably avoided.

61.     Plaintiff's and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

62.     United's conduct in this regard was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and the other Class members and, as such, warrants the imposition of punitive damages.

## COUNT II
## COMMON LAW FRAUD
### (on behalf of the Nationwide Class or, alternatively, the Vermont Class)

63.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

64.     United made material misrepresentations and/or omissions concerning the ability of Plaintiff and Class members to receive refunds for cancelled flights. For example, United falsely represented that Plaintiff and the Class members were only able to receive travel vouchers United did not fully and truthfully disclose to its customers that they were entitled to receive refunds. As a result, Plaintiff and the other Class members were fraudulently induced to purchase airline tickets and were unable to pursue refunds of amounts paid for tickets.

65.     United had a duty to disclose that Plaintiff and the Class members were entitled to refunds when Plaintiff and the Class members contacted United seeking refunds.

66.     These misrepresentations and omissions were made by United with knowledge of their falsity, and with the intent that Plaintiff and Class members rely upon them.

67.     Plaintiff and Class members reasonably relied on these omissions, and suffered damages as a result.

**COUNT III**
**UNJUST ENRICHMENT**
**(on behalf of the Nationwide Class or, alternatively, the Vermont Class)**

68.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

69.     Plaintiff and the Class conferred a direct benefit on United by purchasing airline tickets.

70.     United knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiff and the Class.

71.     United's retention of these benefits in unjust and inequitable due to the conduct described herein.

14

72.     As a direct and proximate cause of United's unjust enrichment, Plaintiff and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

**COUNT IV**
**VIOLATIONS OF THE VERMONT CONSUMER FRAUD ACT**
**(on behalf of the Vermont Class)**

73.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

74.     The Vermont Consumer Fraud Act ("VCPA") makes it unlawful to commit "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). The VCPA provides a private right of action for "[a]ny consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices … or who sustains damages or injury as a result of any false or fraudulent representations or practices" prohibited by the VCPA. ." 9 V.S.A. § 2461(b).

75.     Plaintiff is a "consumer" as defined by 9 V.S.A. § 2451a(a).

76.     United is a "seller" of "goods" or "services" as defined by 9 V.S.A. § 2451a(b)-(c).

77.     In the course of United's business, it knowingly and intentionally failed to provide refunds to consumers, such as Plaintiff, when United cancelled their flights.

78.     United had actual knowledge of the Enforcement Notice and consumers' right to a refund as described herein, but refused to provide refunds to consumers.

79.     Upon being contacted by consumers, such as Plaintiff, United engaged in unfair and deceptive acts and practices by stating consumers were only able to obtain a voucher and not a refund.

80.     United's unfair and deceptive practices were done to enrich its bottom line to the detriment of Plaintiff and the Class.

81.     As set forth above, United's actions occurred in the conduct of trade or commerce and constitutes unfair and/or deceptive trade practices under the VCPA.

82.     Plaintiff and the Class relied upon and were deceived by United's unfair and deceptive misrepresentations of material fact in deciding to purchase airline tickets from United.

83.     Plaintiff and the Class were injured as a result of United's conduct, and suffered ascertainable monetary loss. Plaintiff and the class members and did not receive the benefit of their bargain.

84.     Plaintiff seeks an award of actual damages, treble damages, attorney's fees and costs as permitted by the VCPA. 9 V.S.A. § 2461(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court:

A.     Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class(es) as defined above;

B.     Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

C.     Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.     Award pre-judgment and post-judgment interest on such monetary relief;

E.     Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires United to issue refunds of ticket prices to any member of the class who requests a refund;

F.     Award reasonable attorney's fees and costs; and

G.     Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff, on behalf of himself and the putative Class, demands a trial by jury on all issues so triable.


Dated: April 6, 2020                      Respectfully submitted,


                                          /s/ Daniel O. Herrera
                                          Daniel O. Herrera
                                          State Bar No. 6296731
                                          Nickolas J. Hagman
                                          State Bar No. 6317689
                                          **CAFFERTY CLOBES MERIWETHER
                                          & SPRENGEL LLP**
                                          150 S. Wacker, Suite 3000
                                          Chicago, Illinois 60606
                                          Telephone: 312-782-4880
                                          Facsimile: 318-782-4485
                                          dherrera@caffertyclobes.com
                                          nhagman@caffertyclobes.com

                                          Bryan L. Clobes*
                                          **CAFFERTY CLOBES MERIWETHER
                                          & SPRENGEL LLP**
                                          205 N. Monroe St.
                                          Media, Pennsylvania 19063
                                          Telephone: 215-864-2800
                                          bclobes@caffertyclobes.com

                                          Joseph G. Sauder*
                                          Joseph B. Kenney*
                                          **SAUDER SCHELKOPF LLC**
                                          1109 Lancaster Avenue
                                          Berwyn, Pennsylvania 19312
                                          Telephone: (610) 200-0580
                                          jgs@sstriallawyers.com
                                          jbk@sstriallawyers.com

                                          ***Attorneys for the Plaintiff and the Putative Class***

                                          *Admission pro hac vice anticipated*